No. 102,114

MILANO'S, INC., *Appellant*, v. KANSAS DEPARTMENT OF LABOR, CONTRIBUTIONS UNIT, *Appellee*.

(293 P.3d 707)

Opinion filed February 1, 2013.

*Michael W. Merriam*, of Topeka, argued the cause and was on the brief for appellant.

*Brett A. Flachsbarth*, of Kansas Department of Labor, argued the cause, and *Darren E. Root* and *A.J. Kotich*, of the same agency, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Milano's, Inc., appeals the Kansas Department of Labor's determination that its exotic dancers are employees rather than independent contractors for purposes of unemployment insurance.

This case, arising on petition for review, involves the relationship between provisions in the Kansas Employment Security Law (KESL), K.S.A. 44-701 *et seq.*, as they existed before amendments that took effect in 2011 on the one hand and common-law rules used to determine the existence of employee status on the other. In addition, Milano's argues that the Department's determination was not supported by substantial competent evidence and that the Court of Appeals erred by concluding that Milano's had abandoned arguments on appeal.

## Factual and Procedural History

Milano's purchased Club Orleans in July 2002. After contacting the Department of Revenue, Milano's President John Samples began treating the club's dancers as independent contractors rather than employees in 2004. From that point forward, the dancers were no longer paid a nominal weekly wage, instead earning only tips paid by customers of Club Orleans.

In 2005, in response to an unemployment claim filed by a Club Orleans dancer, the Unemployment Tax Contributions Unit of the Kansas Department of Labor investigated. The Unit auditor assigned to the investigation, Mike Mahan, determined that the dancers were employees under K.S.A. 44-703(i)(3)(D).

Milano's challenged Mahan's determination, and a Department of Labor hearing officer heard testimony from Samples; Club Orleans manager Becky Kerley; dancers Robin Royal and Julane Hiebert; Mahan; and three other Department employees, tax auditor Kelly Brader, supervisor E.W. "Skip" Sayler, and delinquent account supervisor Roc Biffinger.

The hearing officer determined that the dancers' tips qualified as wages under K.S.A. 44-703(o). Further, because the dancers received wages, they were employees under K.S.A. 44-703(i)(3)(D), unless they fell within the exception outlined in K.S.A. 44-703(i)(3)(D)(i) and (ii).

The hearing officer cited four factual findings to support his conclusion that Milano's controlled the activities of the dancers: First, the dancers were subject to house rules that prohibited illicit or illegal conduct and regulated interaction among the dancers and between the dancers and customers. Second, Kerley and Samples had testified that a dancer's violation of the rules meant Milano's could fine or terminate the dancer. Third, the rules set minimum tips for various types of dances. And, fourth, Milano's enforced the house rules on minimum tips. The hearing officer acknowledged contrary evidence from Milano's, including the dancers' ability to schedule their own shifts.

The hearing officer noted that the parties had no dispute about the fact that dancers performed all of their services at Club Or-

leans. The officer concluded that, despite Milano's' "creative assertion that a gentlemen's club is merely a place with good atmosphere, good lighting and good food," the facts reflected that the atmosphere of Club Orleans was largely derived from the presence of its semi-nude dancers.

Because the officer determined that the dancers received wages for services as defined by K.S.A. 44-703(i)(3)(D), and that K.S.A. 44-703(i)(3)(D)(i) and (ii) did not apply, he concluded that the dancers were employees under the KESL. He therefore ordered prospective relief, requiring Milano's to develop and use an internal procedure for reporting its dancers' tips and to further report the tips to the Department of Labor for purposes of paying its unemployment insurance contributions.

Milano's filed a petition for judicial review, claiming that the hearing officer made findings of fact not supported by substantial competent evidence and disregarded undisputed facts, and that he incorrectly interpreted K.S.A. 44-703(i)(3)(D).

The district court judge agreed with the findings and conclusions of the hearing officer. The judge concluded that tips were wages under the plain language of K.S.A. 44-703(o). In response to Milano's' argument that a contract of hire must exist before the dancers could be classified as employees, the judge concluded that such a contract existed because the dancers had to complete an application in which they agreed to abide by the house rules. The judge also ruled that Milano's maintained a right to control the dancers and that their services were provided in the ordinary course of Milano's business—noting that it provided a place to perform, that the dancers' customers were customers of Club Orleans from whom it received a cover charge, that Milano's instituted a minimum tip policy without input from the dancers, that the dancers were required to accept drinks from customers, and that Milano's provided some supplies to the dancers. The judge also observed that one of the main purposes of Club Orleans was to entertain customers with the dancers' performances. The club's advertisements included billboards and internet activity incorporating images of the dancers. The club also provided a stage, music, and a tanning booth for the dancers.

Milano's appealed to the Court of Appeals, which affirmed the decision of the district judge. *Milano's, Inc. v. Kansas Dept. of Labor*, 43 Kan. App. 2d 779, 231 P.3d 1072 (2010). The appellate panel interpreted the plain language of K.S.A. 44-703(o) to cover the dancers' tips as wages. 43 Kan. App. 2d at 784-85. Further, under the plain language of K.S.A. 44-703(i)(3)(D), the dancers qualified as employees who received wages, and Milano's had been unable to meet its burden to demonstrate that it did not maintain a right of control over the dancers or that their services were performed outside its ordinary course of business. 43 Kan. App. 2d at 789.

We granted Milano's petition for review.

## DISCUSSION

Actions of the Department of Labor are reviewable under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA). See K.S.A. 44-709(i). Milano's, as the party arguing that the agency's action is invalid, bears the burden of proving the invalidity. See K.S.A. 77-621(a)(1); *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010).

K.S.A. 77-621(c) lists eight categories of cases in which this court may grant relief from an agency decision. Milano's appears to rely on two of them: subsection (c)(4), which applies if the Department of Labor abused its discretion by erroneously interpreting or applying a statute, in this case, K.S.A. 44-703(i)(1)(B), K.S.A. 44-703(i)(3)(D), and K.S.A. 44-703(o); and subsection (c)(7), which applies if the Department of Labor based its order on a determination of fact not supported by evidence in the record.

Interpretation of a statute raises a question of law reviewable de novo on appeal. See *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 754, 189 P.3d 494 (2008); see also *Powell*, 290 Kan. at 567 (court no longer gives deference to agency interpretation of statute).

"When courts are called upon to interpret statutes, the fundamental rule governing our interpretation is that 'the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted.' *State ex rel. Stovall v.*

*Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001). For this reason, when the language of a statute is plain and unambiguous, courts 'need not resort to statutory construction.' *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007). Instead, '[w]hen the language is plain and unambiguous, an appellate court is bound to implement the expressed intent.' *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004).

"Where a statute's language is subject to multiple interpretations, however, a reviewing court 'may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.]' *Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000). Generally, courts should construe statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006). We ascertain the legislature's intent behind a particular statutory provision 'from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.]' *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989); see also *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003). Thus, in cases that require statutory construction, 'courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia.*' *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975)." *Bremby*, 286 Kan. at 754-55.

As mentioned, the pertinent KESL subsections advanced by the parties for our consideration in this case are K.S.A. 44-703(i)(1)(B), K.S.A. 44-703(i)(3)(D), and K.S.A. 44-703(o). We must decide what they mean and how they fit together.

The first two contain definitions of "employment," as that term is used in the KESL. K.S.A. 44-703(i)(1)(B) provides:

" 'Employment' means:

(1) Subject to the other provisions of this subsection, service, including service in interstate commerce, performed by . . .

. . . .

(B) any individual who, under the *usual common law rules applicable in determining the employer-employee relationship*, has the status of an employee." (Emphasis added.)

K.S.A. 44-703(i)(3)(D) provides:

"The term 'employment' shall *also* include:

. . . .

(D) Services performed by an individual for wages *or* under any contract of hire shall be deemed to be employment subject to this act *unless and until* it is shown to the satisfaction of the secretary that: (i) Such individual has been and will continue to be free from control or direction over the performance of such services, both under the individual's contract of hire and in fact; *and* (ii) such service is either outside the usual course of business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed." (Emphasis added.)

### K.S.A. 44-703(o) defines "wages" and provides:

" 'Wages' means *all* compensation for services, including commissions, bonuses, back pay and the cash value of all remuneration, including benefits, paid in any medium other than cash. . . . Effective January 1, 1986, *gratuities, including tips received from persons other than the employing unit, shall be considered wages when reported in writing to the employer by the employee.* Employees must furnish a written statement to the employer, reporting all tips received if they total $20 or more for a calendar month whether the tips are received directly from a person other than the employer or are paid over to the employee by the employer. This includes amounts designated as tips by a customer who uses a credit card to pay the bill." (Emphasis added.)

The plain language of K.S.A. 44-703(i)(1)(B) states that employment is service provided by a person with the status of an employee as determined under common-law rules. See *Wallis v. Secretary of Kans. Dept. of Human Resources*, 236 Kan. 97, 102, 689 P.2d 787 (1984). And past caselaw from this court, although mentioning K.S.A. 44-703(i)(3)(D), has focused primarily on evaluating common-law factors indicating employment under K.S.A. 44-703(i)(1)(B), particularly stressing the importance of the purported employer's right of control over the employee and his or her work. See *Hartford Underwriters Ins. Co. v. Kansas Dept. of Human Resources*, 272 Kan. 265, 272, 275-76, 32 P.3d 1146 (2001) (personal care attendants for disabled person employees rather than independent contractors; disabled person controlled means, manner of job performance, including hiring, training, supervision; disabled person retained right to terminate); *Wallis*, 236 Kan. at 102-03 (citing *Jones v. City of Dodge City*, 194 Kan. 777, 779-80, 402 P.2d 108 [1965]) (dealers of vacuum cleaners employees of vacuum cleaner company; primary test of existence of employer-employee

relationship whether employer has right of control, supervision over work of alleged employee; "It is not the actual interference or exercise or the control by the employer but the existence of the right or authority to interfere or control."); *Crawford v. Dept. of Human Resources*, 17 Kan. App. 2d 707, 709-10, 845 P.2d 703 (1989), *rev. denied* 246 Kan. 766 (1990) (product demonstrators not employees; under *Wallis*, right to control, direct method, manner of work most significant; right to discharge, payment by hour rather than job, furnishing of equipment also factors).

If K.S.A. 44-703(i)(1)(B) does not settle the question in favor of a conclusion that employment exists, the plain language of K.S.A. 44-703(i)(3)(D) provides that employment "also" exists when a person performs services for wages "or" under "any contract of hire," unless a specified exception is demonstrated to exist to the satisfaction of the Secretary of Labor. Either the performance of services for wages or a contract of hire is sufficient; both need not be present in order for this auxiliary definition of employment to be satisfied, in essence giving rise to a presumption that may be rebutted by the specified exception. The exception has two requirements: (1) The person must be free from any actual or contractual control by the purported employer over the person's performance of the subject services, and (2) the services must be outside the usual course of the purported employer's business or outside of the purported employer's places of business.

If K.S.A. 44-703(i)(3)(D)'s auxiliary definition of employment comes into play, and there is no contract of hire, then the K.S.A. 44-703(o) definition of "wages" must be considered. That definition begins broadly: Wages include "all compensation for services." But gratuities such as tips must be reported in order to give an employee any practical remedy: "[T]ips received from persons other than the employing unit [] shall be considered wages when reported in writing to the employer by the employee." K.S.A. 44-703(o).

In short, if the hearing officer in this case had determined that the dancers at Club Orleans were employees of Milano's under the common-law rules expressly incorporated into K.S.A. 44-703(i)(1)(B), then there would have been no need to examine

whether the auxiliary definition of employment in K.S.A. 44-703(i)(3)(D) applied. Likewise, the hearing officer would not have needed to decide whether the tips the dancer received from patrons of the club qualified as wages under K.S.A. 44-703(o).

But this is not the route the hearing officer and, later, our two lower courts, took. Instead, they focused on the auxiliary definition of employment in K.S.A. 44-703(i)(3)(D) and the existence or nonexistence of payment of wages for the dancers' services under K.S.A. 44-703(o).

We regard this repeated pattern of analysis as unwarranted under the plain language of the KESL provisions outlined above. The finer points of what are now historical versions of K.S.A. 703(i)(3)(D) and K.S.A. 44-703(o) need not have been examined or applied, because the determinative question in this case can be answered more simply and directly by K.S.A. 44-703(i)(1)(B). If the dancers at Club Orleans had the status of employees under the "usual common law rules applicable in determining the employer-employee relationship," as we have explained those rules in our caselaw, then they were employees under the KESL. As stated, the critical common-law factor is the employer's right of control over the employee and his or her work.

Ample substantial competent evidence in the record before us, as echoed in the factual findings below, demonstrates that Milano's possessed such a right of control over the dancers at Club Orleans. Most telling, the house set various rules, and dancers' violations of those rules were punishable by fines and termination.

Having reached this conclusion, we need not take up the propriety of the Court of Appeals panel's observation that Milano's had abandoned certain arguments by failure to brief them on appeal. Even if the panel erred in this respect, it makes no difference in the outcome. We have fully considered all of Milano's arguments on all issues.

Although we have traveled to the result by a route different from that followed below, the judgments of the hearing officer and district court are affirmed. The decision of the Court of Appeals is affirmed.