NOT DESIGNATED FOR PUBLICATION

No. 111,980

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HAROLD E. HEIER,
*Appellant*,

v.

EMPLOYMENT SECURITY REVIEW BOARD,
KANSAS DEPARTMENT OF LABOR,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; MARK A. VINING, judge. Opinion filed September 4, 2015. Affirmed in part and dismissed in part.

*Harold E. Heier*, for appellant pro se.

*Alexandra Blasi*, of Kansas Department of Commerce, for appellee Kansas Department of Commerce.

*Justin McFarland*, special assistant attorney general and deputy general counsel, of Kansas Department of Labor, for appellee Kansas Employment Security Board of Review, Kansas Department of Labor.

Before SCHROEDER, P.J., ARNOLD-BURGER and POWELL, JJ.

*Per Curiam*: Harold E. Heier appeals the Kansas Department of Labor's (KDOL) decision to reduce his weekly unemployment compensation benefit amount when he began drawing a pension benefit from his former employer. The KDOL's decision was affirmed by an unemployment insurance referee (Referee), by the Kansas Employment

1

Security Board of Review (the Board), and by the district court. Heier now asks this court to review that decision. Finding no error, we affirm.

In addition, Heier appeals the district court's decision dismissing his claim for certain federal benefits and health premium tax credits related to his unemployment for failure to exhaust administrative remedies. Because we find there was no final agency order issued regarding Heier's claim—a prerequisite to judicial review—we must dismiss Heier's claim for lack of jurisdiction. Heier retains his statutory right to seek judicial review of any final agency action related to his claim, once such an order is issued and notice thereof is properly served upon him.

Finally, Heier contends that his wife was a party to the agency action and that she had standing to appeal the KDOL's action. Because Heier has failed to show that his wife is a person who has standing to obtain judicial review, we find that the district court properly held that Heier's wife lacked standing to represent him or speak on his behalf.

FACTUAL AND PROCEDURAL HISTORY

On June 29, 2012, Heier was issued a notice of layoff or working warn (hereafter referred to as notice) by his employer, Hawker Beechcraft. This notice informed Heier that he would be laid off at the end of his shift on August 28, 2012, because of a reduction in force. Heier was not required to return to work after receiving that notice on June 29, 2012.

After being laid off, Heier filed for unemployment insurance compensation. After exhausting his state unemployment benefits, Heier filed for additional federally funded emergency unemployment compensation under the federal Supplemental Appropriations Act, 2008, known as EUC.

2

In May 2013, the KDOL requested confirmation from Heier that he was receiving a pension payment. Heier responded confirming that he was receiving a pension payment from Hawker Beechcraft in the amount of $688.50 per month. As a result, the KDOL sent Heier a notice of determination finding that Heier's benefit amount should be reduced due to his receipt of a pension payment from his base period employer, Hawker Beechcraft. Heier appealed the notice of determination.

The Referee conducted a phone hearing on the issue of the reduction in Heier's weekly benefit amount due to his pension payment. During the hearing, Heier confirmed that he was receiving the pension payment and that he did not contribute to the pension in any way. The Referee affirmed the benefit reduction, explaining the following: (1) that the pension came from Heier's base period employer; (2) that it was paid 100% by the employer; and (3) that the prorated weekly benefit reduction should be $159. Heier then appealed to the Board.

The Board upheld the Referee's decision which affirmed the benefit reduction. Heier then appealed the Board's decision to the Sedgwick County District Court. Heier's argument before the district court was that under K.S.A. 2012 Supp. 44-706(n) his weekly benefits should only be reduced the week that he actually receives his monthly pension payment and that it should not be reduced on a prorated basis. The district court rejected this argument, finding as follows:

> "[T]he Agency has determined that a monthly pension should be calculated to what is received each week on a pro rata basis, and that is not an arbitrary or capricious or otherwise unlawful determination on their part. And in applying the law so that you are entitled to the benefits you're entitled to under the law without getting extra benefits or an unjust enrichment under the benefit calculations, they've applied your pension over the course of weeks to allow you to continue receiving your unemployment compensation, but only at a reduced rate."

3

In his amended petition for judicial review, Heier added additional parties and an additional issue, both of which were dismissed by the district court.

Heier appeals the district court's dismissal of the additional parties and issues and also appeals the court's decision to affirm the weekly reduction of his benefits.

ANALYSIS

*KDOL properly reduced Heier's weekly unemployment benefit amount.*

In his first issue on appeal, Heier maintains that the district court erred in upholding the reduction in his weekly unemployment benefit amount. Heier argues that he did not have a base period employer because his benefits are federally funded, and therefore, K.S.A. 2012 Supp. 44-706(n) does not apply to him.

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, defines the scope of judicial review of state agency actions unless the agency is specifically exempted from application of the statute. K.S.A. 2012 Supp. 77-603(a); *Ryser v. State*, 295 Kan. 452, 458, 284 P.3d 337 (2012). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity. K.S.A. 2012 Supp. 77-621(a)(1); *Milano's, Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 500, 293 P.3d 707 (2013). Additionally, appellate courts exercise the same statutorily limited review of agency's action as does the district court, as though the appeal had been made directly to the appellate court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010); *Clawson v. Kansas Dept. of Agriculture*, 49 Kan. App. 2d 789, 795, 315 P.3d 896 (2013).

On appeal, Heier essentially argues that the KDOL erroneously interpreted or applied the law under K.S.A. 2012 Supp. 77-621(c)(4). Under K.S.A. 2012 Supp. 77-

4

621(c)(4), our court shall grant relief only if it determines that the agency has erroneously interpreted or applied the law. And as stated earlier, the burden is on Heier to prove the invalidity of the agency action. K.S.A. 2012 Supp. 77-621(a)(1).

The applicable statute at issue in this case is K.S.A. 2012 Supp. 44-706(n), which states that an individual is disqualified for benefits "[f]or any week in which an individual is receiving a governmental or other pension, retirement or retired pay, annuity or other similar periodic payment under a plan maintained by a base period employer and to which the entire contributions were provided by such employer . . . ."

"Base period" is further defined as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." K.S.A. 2012 Supp. 44-703(b).

In this case, Heier testified during his phone hearing with the Referee that his pension payment is provided by his former employer Hawker Beechcraft. Heier further admitted that he did not contribute to this pension and that it was provided 100% by the employer.

Heier's sole dispute on appeal related to the application of this section to him is his contention that Hawker Beechcraft was not his base employer. He provides no support for this position, except to point to the fact that at the time he started receiving his pension he was receiving federal benefits under the EUC program, not state benefits. But as the Board points out in its brief, the terms and conditions of the state law which apply to claims for state benefits, likewise apply to claims under the EUC program. See Pub. L. No. 110-252, § 4001(d), reauthorized by the Middle Class Tax Relief and Job Creation Act of 2012, Pub. L. No. 112-96.

Based on these facts, it is clear that under K.S.A. 2012 Supp. 44-706(n), Heier's weekly benefit amount should be reduced by the amount of his pension payment. As a result Heier has failed to meet his burden of proof that the KDOL erroneously interpreted or applied the law. Therefore, we affirm the weekly reduction of Heier's benefits based on the prorated pension payment.

*The district court lacked jurisdiction over Heier's appeal related to benefits to which he believes he was entitled under the Trade Adjustment Assistance (TAA) program.*

Heier argues that the district court erred in dismissing his appeal of the decisions made by the Kansas Department of Commerce (KDOC) and its employees related to his TAA benefits for failure to exhaust administrative remedies. To adequately understand this issue, a general explanation of the TAA program as it relates to Heier is in order.

*TAA program benefits, in general and as they relate to Heier*

In addition to the benefits provided by the EUC program, Heier sought benefits under the federally funded TAA program, part of the Trade and Globalization Adjustment Assistance Act of 2009 (TGAAA) Pub. L. No. 111-5, Div. B, Title I, Subtitle I (§ 1801 *et seq.*), Feb. 17, 2009, 123 Stat. 367, which provides training programs to workers who become involuntarily separated from certain industries involved in international trade. See *Former Em. of BMC Software v. Sec. of Labor*, 454 F. Supp. 2d 1306, 1309-11 (C.I.T. 2006) (detailing history and policy underpinnings of trade adjustment assistance programs).

Trade Readjustment Allowances (TRA) are also provided under the TAA program, including a benefit that is of most import to Heier, Health Coverage Tax Credits (HCTC) which would allow a direct tax credit for a large portion of his health insurance premiums during his term of eligibility. Heier was notified that he was eligible to apply

6

for TAA program services and associated TRA and HCTC. Application deadlines were associated with each of these programs, and the deadlines were calculated from Heier's layoff date. The TGAAA Application for Benefits (application), which Heier was required to complete, indicates that it is the KDOC that administers the program and it is the KDOL that is responsible for notifying the Internal Revenue Service of Heier's potential eligibility for HCTC.

In applying for these benefits, Heier signed the application listing June 29, 2012, as his layoff date. However, he has consistently disagreed with using his last date worked as his layoff date, instead believing that August 28, 2012, was the appropriate date because that was the last day he was paid for work. In fact, the letter he received from Hawker Beechcraft indicated that he was to be laid off at the close of his shift on August 28, 2012. Furthermore, the notice on June 29 was simply the federally required notice for mass layoffs. Heier contends that the federal act that requires such notice specifically states that the worker's last day of employment is considered the date of layoff. He asserts that personnel at the Wichita Workforce Center, employed by the KDOC, "*strong[-]armed*" him into signing the application form with the wrong date telling him that was the only way to qualify for TAA benefits.

There is a reason the separation date is critical to Heier's position. In order to get TRA and related HCTC, Heier was required to participate in certain training programs to assist in his reemployment efforts or be waived from these programs. If he was within 2 years of retirement, he could be waived from the training requirement. The parties do not dispute that Heier was within 2 years of retirement. In fact he was already receiving retirement benefits which formed the basis for the EUC appeal. Based on a separation date of June 29, 2012, he was required to request a waiver of the training requirement within 26 weeks of separation, or by December 29, 2012, a date that had already passed at the time of his application in February 2013, making it impossible for him to comply. There was apparently the possibility of a 45-day extension of this deadline, but that

deadline had also passed. The application form stated that failure to meet the deadline "may" make the applicant ineligible to receive benefits. The application form also stated that Heier understood that if he disagreed "with *this determination*, I may file an appeal within 16 calendar days from the date of *determination*." (Emphasis added.) It is unclear what determination the form is referring to. It appears to refer to a determination of eligibility for benefits. Moreover, the application form advised Heier that if he missed "the deadline date to file an appeal, it still may be considered if [he could] provide that a timely response was impossible to achieve due to excusable neglect." He was encouraged to apply for such a waiver at his next appointment with his KDOC caseworker on March 7, 2013.

The import of his separation date comes into focus if we consider the result if the August 28, 2012, date was used as his separation date. He would have 26 weeks, or until February 26, 2013, to file for a waiver of the training requirement, a date that had not yet passed. Heier attempted to comply with that deadline, which was just 1 week after his application was filed, as well as the suggestions from KDOC staff that he apply for a waiver. Apparently, due to a snow storm, the Wichita Workforce Center, where he was supposed to obtain and deliver his request for waiver, was closed from February 20 through at least February 26, 2013. Because of this and his inability to obtain an approved form, Heier prepared his own waiver form, had it notarized, and faxed it to the office on February 26, 2013. The KDOC claims on appeal that the waiver was not accepted because it was not on an approved form, although it is not clear how the information contained in his waiver was deficient or how Heier was formally notified of the deficiency. KDOL and KDOC employees encouraged him to file a request for waiver on an approved form—even after February 26—and suggested it would be viewed favorably. He was advised by personnel at KDOL that it could extend the deadline for his waiver at any time under the concept of "equitable tolling." Heier, however, refused to do so, expressing confusion over the basis for the equitable tolling concept and his position that he had already submitted a waiver that had yet to be ruled on.

8

*The district court decision*

The district court held that Heier was not entitled to judicial review of the KDOC's actions related to the TAA program benefits (TRA and HCTC) because he had failed to exhaust administrative remedies after his program benefits were denied. Relying on K.S.A. 77-607 and K.S.A. 2012 Supp. 77-612, the district court further found that Heier had failed to present any facts which suggest he was unable to file an appeal, that he was unaware of any appeal rights, or that he was unduly burdened in such process.

K.S.A. 2012 Supp. 77-612 provides as follows:

> "A person may file a petition for judicial review under this act only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review . . . ."

The KDOC argued before the district court that its benefit denial determination was made when Heier signed the application for benefits form in February 2013. The KDOC points to no other final appealable order. It argued Heier had 16 days after the date of the application to appeal. The district court accepted the KDOC's position. Accordingly, Heier's amended petition attempting to appeal the KDOC decision regarding his TAA program benefits was dismissed, along with the employees of the KDOC that he named individually.

The KDOC reasserts this argument on appeal and further argues that no magic words are required to create a final agency order. It claims that the application

> "clearly conveyed Mr. Heier's duties and privileges with regard to his receipt of benefits, as well as his legal right to appeal the determination. . . . Nothing in the four corners of the document indicates a preliminary or intermediate determination made in anticipation

9

of another action or agency. [Citation omitted.] No matters were still being actively considered and all aspects of the TRA and HCTC benefits had been resolved."

*Analysis*

The determination of a district court's jurisdiction to consider a petition for judicial review of an agency's action is a question of law over which this court has unlimited review. *Friedman v. Kansas State Bd. of Healing Arts*, 287 Kan. 749, 751, 199 P.3d 781 (2009). Generally, only final agency actions are subject to judicial review. K.S.A. 77-607(a). A final agency action is "the whole or a part of any agency action other than nonfinal agency action." K.S.A. 77-607(b)(1). A nonfinal agency action is "the whole or a part of an agency determination, investigation, proceeding, hearing, conference or other process that the agency intends or is reasonably believed to intend to be preliminary, preparatory, procedural or intermediate with regard to subsequent agency action of that agency or another agency." K.S.A. 77-607(b)(2). Judicial review of nonfinal agency action can be taken "only if: (a) It appears likely that the person will qualify under K.S.A. 77-607 for judicial review of the related final agency action; and (b) postponement of judicial review would result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement." K.S.A. 77-608. So we first must determine if there was a final agency action related to Heier's TAA program benefits (TRA and HCTC).

Contrary to the district court's conclusion that the application was a final agency order subject to appeal, we find it was nothing more than a preliminary or preparatory step in the procedure to determine allowable benefits. The application form was not a determination of eligibility; it was merely, as titled, an application that indicated Heier's benefits "may" be denied, indicating some future act. It also indicated the information on the application would be used for determining his eligibility for benefits and that if he failed to meet the waiver deadline he "may be determined ineligible to receive TRA,"

10

again indicative of a future determination. Given our finding that the application was not a final and, therefore, appealable order, we examine if there was any other final order that would have given the court jurisdiction over this issue.

Our record on appeal does not contain any formal denial of TAA program benefits from either the KDOL or the KDOC from which Heier could appeal. There was clearly a decision regarding his EUC benefit reduction, mailed June 25, 2013, which formed the basis of his timely appeal on that issue to the Referee and ultimately the Board. There is no indication in the record that Heier ever received a ruling concerning the waiver request he submitted on February 26, 2013. There were numerous emails and letters exchanged between the parties regarding Heier's contention that the separation date used to calculate his TRA and HCTC was wrong and the State's insistence that it was correct. Each side clearly stated the compelling rationale for their respective positions.

When Heier appealed the reduction of his EUC benefits, he also appealed the calculation of his separation date under the TAA program. However, in his appeal he does not reference any particular order from which he is appealing but states that he has been unable to obtain the IRS tax credit under HCTC.

At the hearing before the Referee, Heier was told that the TRA claim was not ripe for review until his extended unemployment benefits expired on August 25, 2013. This is consistent with the letter Heier received from the KDOL notifying him of his TAA eligibility. It stated that because TRA is an extension of unemployment insurance, it is "payable only after you have exhausted all your entitlement to unemployment insurance." He was told by the Referee that he would get a notification about his TRA benefits at a later time and that the Referee could not consider the issue at that time. Likewise, the Referee did not mention the issue in her decision, nor did the Board reference it when it incorporated the Referee's decision, even though Heier did raise the issue again in his filings before the Board and in a letter to the Board requesting reconsideration. This

11

would support a finding that no final appealable determination had yet been made, resulting in both the Referee and the Board declining to accept jurisdiction over the issue. There is no indication of any correspondence in the record on appeal after August 25, 2013, nor any formal letter or informal correspondence specifically denying TRA benefits. And finally, we return to the positions of the KDOC and the Board that the application was the final determination from which appeal rights sprang, indicating that they are not aware of any other appealable orders either.

Because there was no final agency action from which to appeal, the only way the district court would obtain jurisdiction is "if: (a) It appears likely that the person will qualify under K.S.A. 77-607 for judicial review of the related final agency action; and (b) postponement of judicial review would result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement." K.S.A. 77-608. Assuming Heier's position would be subject to appeal if the agency's action was final under K.S.A. 77-608(a), we next must examine whether it would result in an inadequate remedy or irreparable harm if we required Heier to wait until there was a final agency action from which to appeal.

The KDOC argues that no inadequate remedy or irreparable harm will result from the denial of what amounts to an interlocutory appeal. Heier's argument is a bit hard to follow but appears to be that he did comply with all administrative requirements by timely submitting a request for waiver of training and the agency failed to submit a sufficient record that it reviewed his claim, thus resulting in an inadequate remedy or irreparable harm due to its inaction. But he does not claim any specific harm that would result if we were to require him to submit to administrative exhaustion and judicial review after he receives a final order.

Although the district court dismissed Heier's claim for failure to exhaust administrative remedies, we find that there has never been a final order served on Heier

12

related to his TRA and HCTC benefits from which he could pursue administrative review under the Kansas Administrative Procedure Act, K.S.A. 77-501 *et seq.*, and, subsequently, judicial review under the KJRA. We have been presented with no evidence of the inadequacy of such a remedy or any allegation of irreparable harm that will result from allowing Heier the process he is due related to any adverse agency decision. He still has a right to present his case that his termination date was in error and his request for waiver was substantially compliant and timely entitling him to TRA and, more importantly, HCTC benefits. If he is successful, the only harm we can foresee is the necessity that he file amended tax returns for the years he should have been allowed, but was denied, the HCTC tax credit.

In sum, we find that Heier's claim against the KDOC and its employees related to his TRA and HCTC benefits must be dismissed for lack of jurisdiction. Once a final agency order has been issued with proper notice to Heier, he retains all of his appeal rights related to his TRA and HCTC benefits under the KJRA.

*Heier's wife does not have standing in this case.*

In passing, Heier contends that his wife was a party to the agency action and that she has standing to appeal the KDOL's action.

Under the KJRA, only four classes of people have standing to obtain judicial review of an agency action:

> "The following persons have standing to obtain judicial review of final or nonfinal agency action:
> (a) A person to whom the agency action is specifically directed;
> (b) a person who was a party to the agency proceedings that led to the agency action;

13

(c) if the challenged agency action is a rule and regulation, a person subject to that rule; or

(d) a person eligible for standing under another provision of law." K.S.A. 77-611.

A "party" is further defined in K.S.A. 77-602(f) which states:

"'Party to agency proceedings,' or 'party' in context so indicating, means:
(1) A person to whom the agency action is specifically directed; or
(2) a person named as a party to any agency proceeding or allowed to intervene or participate as a party in the proceeding."

Based on these statutes, Heier has failed to show that his wife is a person who has standing to obtain judicial review. Heier's wife was not a named party, and the agency action was not directed towards her. Moreover, Heier's wife participated in the judicial review as a witness but was never allowed to intervene or participate as a party. Thus, the district court properly held that Heier's wife lacked standing to represent him or speak on his behalf.

Affirmed in part and dismissed in part.