No. 118,457

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

ROBERT M. GERLEMAN,
*Appellant*,

and

JEANNETTE M. GERLEMAN,
*Appellee*.

SYLLABUS BY THE COURT

1.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained.

2.

An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to construe the Legislature's intent.

3.

K.S.A. 2017 Supp. 60-2310 governs wage garnishments and authorizes creditors to garnish the wages of debtors subject to various limitations. One such limitation is

1

contained in K.S.A. 2017 Supp. 60-2310(c), which prevents the garnishment of a debtor's wages during the time a debtor is prevented from working at the debtor's regular trade, profession, or calling for any period greater than two weeks because of illness of the debtor or any member of the family of the debtor and until after the expiration of two months after recovery from such illness. The debtor may establish such facts by affidavit.

4.

The term "any member of the family of the debtor" contained in K.S.A. 2017 Supp. 60-2310(c) includes a debtor's father or parent and is not limited to a family member residing in the debtor's household.

5.

Even if a family member has not recovered from the illness, a debtor is no longer entitled to the exemption from garnishment under K.S.A. 2017 Supp. 60-2310(c) once the debtor has returned to work, plus two months.

Appeal from Douglas District Court, JAMES R. MCCABRIA, judge. Opinion filed September 14, 2018. Reversed and remanded with directions.

*Robert M. Gerleman*, appellant pro se.

*Curtis G. Barnhill* and *Adina F. Morse*, of Barnhill & Morse, P.A., of Lawrence, for appellee.

Before MALONE, P.J., MCANANY and POWELL, JJ.

POWELL, J.: Robert M. Gerleman and his now ex-wife, Jeannette M. Gerleman, were divorced in July 2013. Their divorce was very contentious and has resulted in two appeals to this court. After remand from the second appeal, the district court entered a judgment against Robert for unpaid spousal maintenance and Jeannette's portion of Robert's military retirement pay. Armed with the district court's judgments, Jeannette

2

then attempted to garnish Robert's wages. However, shortly after the orders of garnishment were filed, Robert's father, who lives in Texas, was diagnosed with brain cancer, requiring Robert to take off more than two weeks from work to travel from his home in Washington, D.C., to help care for his father as he recovered from brain surgery and sought additional treatment. Robert sought to stop the garnishments during the time he was caring for his ill father as provided for in K.S.A. 2017 Supp. 60-2310(c) and filed an affidavit claiming he was exempt from garnishment because he was prevented from working for more than two weeks due to the illness of a family member. The district court rejected Robert's request, holding that K.S.A. 2017 Supp. 60-2310(c) only exempts a debtor from garnishment if the debtor is prevented from working due to an illness of a member of his or her household—not any family member.

Robert now appeals the district court's refusal to grant him the exemption. As a matter of first impression, we agree with Robert that the words "any member of the family of the debtor" contained in K.S.A. 2017 Supp. 60-2310(c), by its plain language, is not limited to family members residing in the household of the debtor. Consequently, we reverse and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

To say this case has arrived before us via a contentious path is an understatement. In August 2012, Robert filed for divorce from Jeannette, and the district court entered a decree of divorce in July 2013. Two appeals to this court followed; these appeals dealt with different issues than the appeal at hand. *In re Marriage of Gerleman*, No. 114,855, 2017 WL 66339 (Kan. App. 2017) (unpublished opinion); *In re Marriage of Gerleman*, No. 110,461, 2015 WL 1513967 (Kan. App. 2015) (unpublished opinion).

After remand from this court, the district court entered a judgment on May 12, 2017, against Robert for back spousal maintenance owed to Jeannette and for his

3

previously agreed-to portion of military retirement pay. Additionally, the district court found Robert in contempt for his failure to pay the ordered spousal maintenance. The court also reaffirmed the parties' property settlement agreement in which Robert agreed to pay Jeannette spousal maintenance of $1,950 per month for a total of 62 months. Although the record is spotty, it appears that Robert has not approved any qualified domestic relations order (QDRO) dividing his military retirement, nor has he paid any portion of his military retirement pay to Jeannette since he was ordered to do so. Additionally, it appears that Jeannette was able to garnish only a small portion of the spousal maintenance owed to her—$2,841.98 as of July 5, 2017.

Around this same time, the district court entered three orders of garnishment to Robert's employer, the United States Department of Homeland Security: the first on March 16, 2017, to attach earnings for a claimed amount of $15,600; the second on April 18, 2017, to attach earnings for a claimed amount of $2,280.60; and the third on June 14, 2017, to attach earnings for a claimed amount of $65,226.44. This third order of garnishment superseded the first two orders of garnishment. A review of the record on appeal indicates that answers to these orders of garnishment were never filed by Robert's employer, and it is unclear whether amounts were ever withheld from Robert's wages and when.

On May 29, 2017, Robert's father was diagnosed with a brain tumor. His father and stepmother live in Dallas, Texas; at the time, Robert lived and worked in Washington, D.C. On June 5, 2017, Robert's father underwent surgery to remove the tumor and was shortly after diagnosed with brain cancer. On June 9, 2017, Robert took more than two weeks off from work to assist his father and stepmother while his father recovered and sought treatment options. The record on appeal does not indicate the exact length of time that Robert took off work, but Robert stated at oral argument that it was 15 days.

On July 3, 2017, Robert filed an "Affidavit to Cease Garnishment Pursuant to K.S.A. 60-2310(c)," attesting to the above information regarding his father's illness and attesting that as a result of his father's illness he had "been unable to work in [his] regular profession for more than two weeks." On July 12, 2017, Robert filed a Motion for Release of Garnishment Orders, arguing, in part, that an exception under K.S.A. 2017 Supp. 60-2310(c) required the garnishments to cease due to his father's illness.

On July 21, 2017, the district court held a hearing to consider Robert's motion. For reasons that will be discussed in greater detail below, the district court held that Robert was not exempt from garnishment and memorialized this ruling in a journal entry filed on September 1, 2017.

On July 27, 2017, the district court entered another order of garnishment for "spousal support and accrued judgment interest" for $21,494.52. This order of garnishment was issued to Defense Finance and Accounting Service, the federal agency that handles Robert's military retirement pay. On August 28, 2017, the district court entered a fifth order of garnishment for past due retired military pay totaling $68,197.61. This garnishment order was issued to Robert's employer. Again, no answer to either of these garnishment orders appears in the record on appeal, and it is unknown whether amounts were ever withheld.

Although not included in the district court's register of actions and no transcript of the hearing is included in the record, the district court filed a journal entry from a hearing conducted on September 5, 2017, denying Robert's outstanding "Objection to Garnishment, Request for Sanctions" and his "Relief from, and to Set Aside, Void Garnishment." However, for reasons that are unclear based on a review of the record before us, on September 19, 2017, Jeannette filed releases from garnishment on the first three orders of garnishment. There were two additional releases from garnishment filed by Jeannette on July 19, 2017, and July 20, 2017; however, the garnishees and the filing

5

dates listed for the orders of garnishment in the releases do not correspond to the dates and garnishees of the other two remaining orders of garnishment in the record on appeal. Therefore, it appears the July 27 and the August 28, 2017 garnishment orders for $21,494.52 owed for spousal support and $68,197.61 owed for military retirement pay, respectively, remain intact yet unanswered. At oral argument, the parties agreed that the garnishments at issue only involve Robert's wages from the Department of Homeland Security.

Robert timely appeals the district court's finding that his father's illness did not exempt him from garnishment.

IS ROBERT EXEMPT FROM GARNISHMENT UNDER K.S.A. 2017 SUPP. 60-2310(c)?

On appeal, Robert argues that the district court erred in holding that he was not exempt from garnishment under K.S.A. 2017 Supp. 60-2310. This statute governs wage garnishments and authorizes creditors to garnish the wages of debtors subject to various limitations. One such limitation is contained in K.S.A. 2017 Supp. 60-2310(c), which states:

> "*Sickness preventing work*. If any debtor is prevented from working at the debtor's regular trade, profession or calling for any period greater than two weeks because of illness of the debtor or any member of the family of the debtor, and this fact is shown by the affidavit of the debtor, the provisions of this section shall not be invoked against any such debtor until after the expiration of two months after recovery from such illness."

The district court held that this statute did not prevent Robert's wages from being garnished because his father was not a member of his household. At the hearing, the district court held:

"I looked for some guidance on application and interpretation of this subsection, and, frankly, I didn't find much. And my inclination is to restrict the meaning of the word 'family' in this subsection to household members, because it does contain the word 'prevented from working at the debtor's regular trade, profession or calling', and so it's hard for me to think that the Legislature, when they used that word in this subsection, which is a statute of repose in a certain sense, it's to provide protection to a debtor from being garnished when it would create some—an unavoidable substantial hardship for the person.

"When I look at the Family Medical Leave Act it's my understanding of that federal law that it does apply to parents, and I am not aware of a definition that requires the parent to live in the home or depend on the family member for their existence. But, number one, that's federal law which I don't [*sic*], and it was passed in '93, and this act is much older than that, and I am not aware of any—nobody's brought to my attention any reason to believe that that Federal Act has application here. When I look at the word 'prevented' that further strengthens my view that we're talking about immediate household family members.

"So, it's my finding that K.S.A. 60-2310(c) does not have application to the circumstances described by Mr. Gerleman. For that reason the request for exemption is denied."

Resolution of Robert's argument on appeal requires us to examine three issues. First, we must interpret K.S.A. 2017 Supp. 60-2310(c) to determine if Robert's father is included in the Legislature's designation of "any member of the family of the debtor." Second, if Robert's father is considered to be "any member" of Robert's family, we must then assess whether Robert's affidavit was sufficient to exempt him from garnishment. Third, if we declare that Robert was entitled to the exemption from garnishment, we must then determine how long the exemption should have lasted.

Each of these inquires requires us to interpret K.S.A. 2017 Supp. 60-2310(c), which is a question of law over which we exercise unlimited review. See *Neighbor v.*

7

*Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction "is that the intent of the legislature governs if that intent can be ascertained." *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016).

> "'An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to construe the legislature's intent.' [Citations omitted.]" *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

"Dictionary definitions are good sources for the 'ordinary, contemporary, common' meanings of words." *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017).

Each inquiry will now be addressed in turn.

A.    *Under K.S.A. 2017 Supp. 60-2310(c), is Robert's father classified as "any member of the family of the debtor"?*

First, we must determine if Robert's father qualifies as "any member of the family of the debtor" under K.S.A. 2017 Supp. 60-2310(c). This question appears to be a matter of first impression before this court.

Obviously, Robert is the debtor here, and the parties do not appear to dispute that father is included in the definition of family. The focus of the dispute centers around Jeannette's argument that the term family is limited to family residing in the same

8

household. As we see it, defining the term "any member of the family" requires defining its parts, namely the words "any," "member," and "family." Because caselaw on this matter is lacking, in this context and in others, dictionary definitions are appropriate.

First, the word "any" is defined in part as "some, no matter how much or how little, how many, or what kind" and "without limit." Webster's New World College Dictionary 64 (5th ed. 2016). Second, the word "member" is defined in part as "a person belonging to some association, society, community, party, etc." Webster's New World College Dictionary 912 (5th ed. 2016). The true debate lies in the meaning of the word "family." Jeannette argues that the word "family" in this context means a member of the debtor's household.

Relying on *Friedman v. Alliance Ins. Co.*, 240 Kan. 229, 235, 729 P.2d 1160 (1986), Jeannette attempts to argue that the terms "family" and "household" are substantially synonymous. We disagree that *Friedman* supports such a statement. One of the issues the *Friedman* court was attempting to resolve was whether a son could make a claim under his parents' insurance policy even though he had completed college and was in the process of moving out of his parents' home. The issue in the case was principally about the son's residency, and the court quoted with approval a Utah Supreme Court case stating that a "'resident of a household is one who is a member of a family who live under the same roof.'" 240 Kan. at 235 (quoting *American States Ins. Co., Western Pac. Div. v. Walker*, 26 Utah 2d 161, 164, 486 P.2d 1042 [1971]). The court did not say that a member of a family is limited to someone who lives under the same roof.

Black's Law Dictionary defines "family" in part as "[a] group of persons connected by blood, by affinity, or by law, [especially] within two or three generations" and "[a] group consisting of parents and their children." Black's Law Dictionary 721 (10th ed. 2014). Black's Law Dictionary further provides definitions for different categories of "family"—blended family, extended family, immediate family, and intact family. Black's

9

Law Dictionary 721. Of these categorical definitions, the most restrictive is "immediate family," which is defined as "[a] person's parents, spouse, children, and siblings." Black's Law Dictionary 721; see also K.S.A. 2017 Supp. 17-2205(a)(4)(A) (credit union statute defines "'immediate family or household'" as "spouse, parent, stepparent, grandparent, child, stepchild, sibling, grandchild or former spouse and persons living in the same residence [as] a single economic unit"); 1 Elrod, Kansas Law and Practice: Kansas Family Law § 4:1 (2017-2018 ed.) ("Family historically has been defined by biology or marriage.").

Using the ordinary meaning of these terms we have discussed above, we have no trouble concluding that Robert's father should be classified as any member of Robert's family. To read K.S.A. 2017 Supp. 60-2310(c) as Jeannette argues we should—"any member of the family of the debtor *residing in the household of the debtor*"—requires us to read words into the statute that are simply not found there, something we are forbidden to do. See *Ullery*, 304 Kan. at 409. The Legislature did not add any requirement that the family member must live with the debtor, and to place such a limitation on the family member of the debtor goes against the express legislative intent of the statute and adds words into the statute that are plainly not found in its text.

Moreover, this interpretation is in line with how the Legislature has defined "family" in another context. Although admittedly wholly unrelated to the subject matter at hand, in the criminal realm regarding domestic battery, the Legislature defines "'family or household member'" as "persons 18 years of age or older who are spouses, former spouses, *parents* or stepparents and children or stepchildren, and persons who are presently residing together or *who have resided together in the past*." (Emphasis added.) K.S.A. 2017 Supp. 21-5414(e)(2). Parents no longer living with the child are included in this definition of "family."

10

Admittedly, the word "family" could be read quite broadly; therefore, we specifically limit our holding to the facts of this particular case—namely that a member of the debtor's family referred to in K.S.A. 2017 Supp. 60-2310(c) includes a debtor's father or parent, and is not limited to a father or parent residing in the debtor's household. We render no opinion as to what other relation to a debtor may qualify under the term "family." Accordingly, based on the plain language of K.S.A. 2017 Supp. 60-2310(c), Robert's father is a member of Robert's family.

B.      *Was Robert's affidavit submitted under K.S.A. 2017 Supp. 60-2310(c) sufficient to temporarily exempt him from garnishment?*

Next, we must decide whether Robert's affidavit submitted to the district court was statutorily sufficient to satisfy the requirements of K.S.A. 2017 Supp. 60-2310(c). The statute requires the debtor to show by affidavit that the "debtor is prevented from working at the debtor's regular trade, profession or calling for any period greater than two weeks because of illness of the debtor or any member of the family of the debtor."

Here, Robert submitted an affidavit that attested to the following:

"1. On May 29, 2017, my father was diagnosed with a brain tumor.

"2. On June 5, 2017, my father underwent brain surgery to remove the tumor. However, the neurosurgeon was unable to completely remove that tumor and it was determined to be malignant.

"3. On June 8, 2017, it was discovered that the tumor was the most aggressive and most deadly form of brain cancer (Glioblastoma Multiforme).

"4. On or about June 9, 2017, my father and step-mother requested that I travel from my residence and work location in Washington, D.C. to their home near Dallas, Texas to assist them in the coming weeks.

"5. As a result, I have been unable to work in my regular profession for more than two weeks and have been on leave without pay pursuant to the Family and Medical Leave Act since June 19, 2017."

11

Jeannette argues that Robert's affidavit fails to properly allege that his father's illness prevented him from working; rather, his affidavit merely alleged he was unable to work. Obviously, Robert argues that "unable" and "prevented," in this context, mean the same thing. We agree with Robert.

"Prevent" is defined, in part, as "to stop or keep (*from* doing something)," "to keep from happening; make impossible by prior action; hinder," and "to interpose an obstacle." Webster's New World College Dictionary 1154 (5th ed. 2016). "Unable" means "not able; lacking the ability, means, or power to do something." Webster's New World College Dictionary 1570 (5th ed. 2016). Although these two words have different definitions, when the use of the word "unable" in Robert's affidavit is read in context, it logically appears that he was explaining he was unable to work because his father's illness and necessary travel prevented him from working.

Jeannette's argument is that Robert had a choice not to work and, because he had a choice about whether to work, Robert was not prevented from working. However, the statute does not require this showing, and such an argument, when applied, becomes illogical. See K.S.A. 2017 Supp. 60-2310(c). We are to construe statutes to avoid unreasonable results. See *Milano's Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 501, 293 P.3d 707 (2013). As Robert points out, requiring that the debtor have no choice but to miss work would leave only a few situations, and possibly none, to which the exemption would be applicable. For example, a debtor with a hospitalized child would not qualify for this exemption if he or she did not work during this hospitalization because, even without the parent's assistance or care, the hospital would ensure the child's survival while the parent was at work. And if the debtor wanted to be at the hospital to support the child and help with the care decisions, according to Jeannette's interpretation, he or she would have made the choice not to work to be with the child and, therefore, would not qualify as being "prevented from working." We cannot agree with this interpretation.

12

From the affidavit Robert submitted, it is clear that his father requested Robert to be with him in the days after his cancer diagnosis to help him recover and make care and treatment decisions. The fact that his father lives in Texas and Robert was required to travel to help his father logically leads to the conclusion that his father's illness, and the travel it necessitated, both prevented Robert from working and made him unable to do so.

As Robert's affidavit satisfies the conditions contained in K.S.A. 2017 Supp. 60-2310(c), the district court erred in holding that Robert was not exempt from garnishment.

C.    *For how long is Robert exempt from garnishment under K.S.A. 2017 Supp. 60-2310(c) due to his father's illness?*

Having resolved that the garnishment exemption is applicable to Robert, we must now determine how long the exemption applies because its applicability is temporally limited. As to the starting date of the exemption, while neither side addresses this issue, given that the statute requires the debtor to submit an affidavit setting forth sufficient facts entitling the debtor to the exemption, the start date should begin no sooner than the date the debtor files the affidavit. As to the end date, K.S.A. 2017 Supp. 60-2310(c) states that "the provisions of this section shall not be invoked against any such debtor until after the expiration of two months after recovery from such illness."

At oral argument, Robert confirmed that his father was in the gallery, meaning he is still living but apparently still suffering from brain cancer, and that Robert had returned to work after 15 days. At the time of his original diagnosis, Robert's father was given a life expectancy of 13 months. In our view, given the statute's requirement that the debtor be prevented from working to claim the exemption, once the debtor returns to work, it is contrary to the language contained in K.S.A. 2017 Supp. 60-2310(c) to continue the exemption indefinitely until the family member recovers from the illness; instead, the

13

exemption ends once the debtor returns to work, plus the two-month grace period. Although a family member still may not be fully recovered from the illness, the context of the statute indicates that the illness must be preventing the debtor from working. Once the debtor returns to work, the illness suffered by the debtor's family member is no longer preventing the debtor from working and the exemption no longer applies. Any other interpretation would be unreasonable. See *Milano's Inc.*, 296 Kan. at 501.

The plain language of the statute indicates its purpose is to give a debtor a grace period during financial hardship due to his or her inability to work because of the debtor's own or a family member's illness. There is an additional two-month grace period after a return to work to allow the debtor to recover from any financial hardship created during the time the debtor was prevented from working.

Here, it appears Robert has returned to work. Because he has returned to work, Robert's father has apparently reached a point of recovery that no longer prevents Robert from working. To continue Robert's exemption past the two-month period after he returned to work because his father continues to be ill, in our judgment, provides an unintended windfall allowing Robert to continue to avoid his obligations to his ex-wife. If Robert's father's illness is no longer preventing Robert from working, according to the statute, his father's illness cannot serve to indefinitely prevent the garnishment of Robert's wages.

Accordingly, we reverse the judgment of the district court and remand the case for the district court to determine (1) the dates on and after the filing date of the affidavit when Robert was not working due to his father's illness, plus two months; (2) what amounts, if any, were improperly withheld from Robert's wages during this period of time; and (3) the appropriate disposition of any improperly withheld funds.

Reversed and remanded with directions.