No. 121,131

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of D.H.,
A Minor Child.

SYLLABUS BY THE COURT

1.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained.

2.

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible.

3.

Courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation.

4.

The temporal scope of the circumstances to be considered by the court in deciding whether to adjudicate a child as one in need of care must be based on the plain language of the statutory criteria upon which the court is making the adjudication decision. If the statutory criterion is framed in the present perfect tense, then the adjudication decision will depend upon a view of the child's circumstances in the past and perhaps continuing to the present. If the statutory criterion is framed in the present tense, then the adjudication decision will depend upon a view of the child's present circumstances existing on the day of the adjudication hearing.

1

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed October 18, 2019. Reversed and remanded with directions.

*Carol M. Park*, of Schwartz & Park, L.L.P., of Hays, for appellant natural mother.

*Charlene Brubaker*, assistant county attorney, for appellee.

Before STANDRIDGE, P.J., ATCHESON and SCHROEDER, JJ.

STANDRIDGE, J.:  This is an expedited appeal from a child in need of care (CINC) proceeding under the revised Kansas Code for Care of Children (Code), K.S.A. 2018 Supp. 38-2201 et seq. Relevant here, D.H., a minor, lived with her natural father (Father) in Hays, Kansas, from 2009 to 2018. D.H.'s natural mother (Mother) lived in Illinois during that time period. In June 2018, Father died and the district court granted temporary legal custody of D.H. to the Secretary of the Kansas Department for Children and Families (DCF). The district court later issued an order of adjudication finding D.H. to be a child in need of care. Mother appeals from the order of adjudication, arguing the court's finding was based on evidence outside the relevant time period. Mother also argues the court's adjudication decision is not supported by clear and convincing evidence in the record. For the reasons stated below, we reverse the district court's order of adjudication and remand with directions.

FACTUAL AND PROCEDURAL HISTORY

D.H. was born in December 2007. Mother and D.H.'s natural father (Father) were never married and split up not long after D.H. was born.

In April 2008, when D.H. was almost five months old, the State filed a petition in juvenile case number 08-JC-34 alleging that D.H. was a child in need of care. Although the record does not reflect an exact date, the district court later issued an order of

2

adjudication in the 2008 CINC case finding D.H. to be a child in need of care as to both Mother and Father.

In September 2008, the district court issued an order in domestic case number 08-DM-138, which legally established Father's paternity as to D.H. On or around the time this order establishing paternity was filed, Mother became pregnant—but not by Father—with another child.

In April 2009, DCF—formerly known as the Kansas Department of Social and Rehabilitation Services—filed a petition in domestic case number 09-DM-061, requesting that the district court enter an order requiring Mother to pay child support and medical expenses for D.H.

In early May 2009, Father filed a motion to establish residency and parenting time for D.H. Father filed this motion in both the domestic paternity case, 08-DM-138, and the domestic child support case, 09-DM-061. In support of this motion, Father stated, in relevant part:

> "That the [two domestic] cases deal with child support and not residency and parenting time.
> "That there is currently an ongoing CINC case involving [D.H.] Said case is Ellis County Case No. 08-JC-34. Said case is ready for dismissal upon orders of residency and parenting time being entered in [the domestic paternity case and the domestic child support case], as [Father] and [Mother] no longer live together.
> "That the recommendations in Case No. 08-JC-34 [the CINC case] are that [Father] be granted residency and [Mother be granted] supervised visitation of one hour minimum per week with [D.H.]"

Father attached a proposed parenting plan to his motion. With regard to legal custody, Father recommended that the court order joint legal custody of D.H. In support of this

3

recommendation, Father expressly stated that both Mother and Father "are fit and proper persons to have joint responsibility for the care of the minor child [and that it] is in the best interest of the child that the parties jointly share in the care of the child." With regard to physical custody, Father recommended that the court grant him primary physical custody of D.H. and that Mother have at least one hour of supervised visitation per week.

In late May 2009, the district court held a hearing on Father's motion. Father appeared in person and with counsel. Mother appeared in person without counsel. At the outset of the hearing, Father's attorney announced that the parties had come to an agreement regarding residency and parenting time. Father's attorney set forth the terms of the agreement. Although the transcript of this 2009 hearing is not in the record, it appears from the journal entry that the agreement essentially mirrored a proposed parenting plan attached to Father's motion to establish residency and parenting time. After verifying that Mother agreed to the terms stated, the court granted Father primary physical custody (residency) of D.H., with Mother having phone parenting time/visitation once a week. The court noted that Mother could have additional parenting time if mutually agreed upon by Father and Mother. The court further noted that Mother had the right to file a motion to modify residency/parenting time at any time.

On June 16, 2009, the district court filed a journal entry memorializing the rulings on residency and parenting time as announced at the hearing in the domestic cases. On June 19, 2009, the CINC case was dismissed.

Soon after the May 2009 hearing, Mother moved to Granite City, Illinois. At the time of the move, Mother was six or seven months pregnant with her second child, J.Z. Mother said she moved because she was not financially stable, and she had no family in Kansas to help support her. J.Z. was born a couple of months after Mother moved to Illinois. Within his first year, J.Z. was tested and ultimately diagnosed with autism. After this diagnosis, Mother sought out and arranged for J.Z. to receive occupational therapy

4

and physical therapy. J.Z. later was diagnosed with attention deficit hyperactivity disorder and mood disorder. After these diagnoses, Mother sought out and arranged for J.Z. to receive family therapy and individual therapy.

In addition to obtaining the myriad of services necessary for J.Z. after moving to Illinois, Mother also worked to improve herself and achieve stability. Mother said that once she achieved stability for herself and J.Z., she planned to return to Kansas to fight for more access to D.H. After she moved to Illinois in the summer of 2009, Mother obtained her GED, consistently attended appointments for mental health services and medication management, gained employment as a cashier at a grocery store, obtained housing, and obtained a vehicle and a driver's license, while at the same time being a single parent to a special needs child whom she made sure was obtaining the various services and therapy to integrate as much as possible into society.

From Illinois, Mother attempted to exercise her weekly visitation rights with D.H. but was met with resistance from Father. Mother communicated with Father about visitation through Facebook Messenger. Most of the time, Mother would send a message asking for a phone visit with D.H., and Father would not respond. When he did respond, Father would give Mother a reason why the proposed visit could not take place. When Mother requested information about D.H. in her capacity as a parent with joint legal custody of D.H., Father did not respond. Both Mother and D.H.'s maternal grandmother sent messages asking Father whether D.H. needed anything, but Father did not respond. Given Father's actions effectively thwarted Mother's ability to exercise her right to have weekly phone visits with D.H., Mother wanted to hire an attorney to help her modify her visitation and parenting time but could not afford one.

Mother did not see D.H. in person during the six-year period from 2009 to 2015. In 2015, Mother traveled from Illinois to Kansas by Greyhound bus in order to spend time with D.H. Mother returned to Kansas in 2017 to spend time with D.H.

5

Father committed suicide on June 20, 2018. D.H. was the only other person in the house when it happened. Later that evening, a detective from the Ellis County, Kansas Sheriff's Office completed an application to place D.H. in protective custody based on the fact that Father was deceased and that Mother was living in Illinois and had not had recent contact with D.H. The detective advised the district court in the application that he had placed D.H. with her paternal grandfather in Quinter, Kansas. Although there appeared to be no dispute that D.H. had limited contact with her grandfather over the years, the application noted that the paternal grandfather appeared to be D.H.'s only relative who lived in the vicinity.

On the morning of Friday, June 22, 2018, the State filed a petition requesting the district court find D.H. to be a child in need of care. In support of its request, the State alleged D.H. (1) was without adequate parental care, control, or subsistence and the condition was not due solely to the lack of financial means of the child's parents; (2) was without the care or control necessary for the child's physical, mental, or emotional health; and (3) had been physically, mentally, or emotionally abused or neglected or sexually abused. In conjunction with the CINC petition, the State requested the court hold a temporary custody hearing the following Monday, June 25, 2018, at 10:30 a.m. The matter was scheduled as requested, and Mother was provided notice of the temporary custody hearing by telephone on Friday afternoon, June 22, 2018.

The temporary custody hearing was held as scheduled on June 25, 2018. Mother traveled from Illinois to Kansas and appeared at this hearing pro se, without counsel. The transcript of the hearing is not included in the record, but the journal entry reflects that the district court ordered D.H. to be placed in the temporary custody of DCF.

On January 25, 2019, District Magistrate Judge Richard Flax held an adjudication hearing to determine whether D.H. was a child in need of care. Mother and D.H.'s therapist testified. At the State's request, the court also reviewed the case files in 08-DM-

6

138 and 09-DM-061. At the end of the hearing, Judge Flax found the State had presented clear and convincing evidence to establish that D.H. was a child in need of care. Although not alleged in the State's petition, Judge Flax found clear and convincing evidence that D.H. was a child in need of care because Mother had abandoned the child. Mother appealed the magistrate judge's finding to the district court. The parties presented oral argument to the district court on March 5, 2019. After reviewing the evidentiary record from the adjudication hearing and considering the arguments of counsel, the district court found clear and convincing evidence that D.H. was a child in need of care because Mother had abandoned the child. The district court also found clear and convincing evidence that D.H. was a child in need of care because she was without adequate parental care, control, or subsistence and without the care or control necessary for her physical, mental, or emotional health.

Mother timely appeals.

ANALYSIS

Mother challenges all three grounds upon which the district court relied in adjudicating D.H. as a child in need of care. First, Mother claims the district court improperly considered and relied on evidence outside the relevant time period. Second, Mother claims there is insufficient evidence in the record to support the district court's adjudication decision. We address each of Mother's claims in turn.

1. *The relevant time period*

In support of its decision to adjudicate D.H. as a child in need of care, the district court made findings of fact that Mother essentially abandoned D.H. in 2009 by moving to Illinois and, on the day the CINC petition was filed, D.H. was without the parental care, control, or subsistence necessary to safeguard D.H.'s physical, mental, or emotional

7

health. Mother asserts that under the Code, the only facts relevant to an adjudication decision are those that exist on the date of the adjudication hearing. Because the district court based its decision on circumstances that existed before the adjudication hearing, Mother argues the court's order of adjudication is both factually and legally flawed.

Mother's argument requires us to review and interpret relevant portions of the Code. We have unlimited review of issues involving statutory construction. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015). When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013). Courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *Milano's Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 501, 293 P.3d 707 (2013).

At the time the CINC petition was filed in this case, K.S.A. 2018 Supp. 38-2202 defined a child in need of care as follows:

> "(d) a person less than 18 years of age at the time of the filing of the petition or issuance of an ex parte protective custody order . . . who:
> (1) Is without adequate parental care, control or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other custodian;
> (2) is without care or control necessary for the child's physical, mental or emotional health; [or]
> . . . .
> (5) has been abandoned or does not have a known living parent."

8

According to Mother, the plain language in these subsections of the statute prohibit the district court from considering circumstances that existed before the adjudication hearing. Conversely, the State argues that the plain language of the statute requires the court to make its adjudication decision based on the circumstances that existed on the day the CINC petition was filed.

We find both parties' interpretations of the language at issue are inconsistent with the grammatical structure of the statute itself. We address the State's argument first. If we read the introduction to this subsection of the statute without any adjectives at all, the statute states that a child in need of care is a person. The words "less than 18 years of age at the time of filing of the petition" is an adjective phrase that describes or modifies the noun "person." And each of the alternative circumstances in the statute also is an adjective phrase that describes or modifies the noun "person." So, contrary to the State's argument, the plain language of the CINC statute does not require the court to make its adjudication decision based only on the circumstances that existed on the day the *CINC petition* was filed. See *In re B.G.*, No. 109,513, 2013 WL 4404574, at *5 (Kan. App. 2013) (unpublished opinion) (statutory language "'at the time of filing of the petition'" does not limit temporal scope of court's review at adjudication hearing); *In re A.M.*, No. 108,012, 2013 WL 518019, at *3-4 (Kan. App. 2013) (unpublished opinion) (same); *In re B.R.H.*, No. 104,574, 2011 WL 1344856, at *5 (Kan. App. 2011) (unpublished opinion) (same).

And contrary to Mother's argument, the plain language of the statute does not require the district court to make its adjudication decision based only on the circumstances that existed on the day of the *adjudication* hearing. For example, K.S.A. 2018 Supp. 38-2202(d)(5), which is one of the enumerated circumstances cited by the district court to support the CINC adjudication here, specifically describes a child in need of care in the present perfect tense as a person who "has been abandoned." Those grounds depend upon a view of the child's circumstances in the past and the present instead of

9

focusing only on the child's present condition. See *In re A.M.*, 2013 WL 518019, at *3-4 (trial court incorrectly ruled that evidence had to relate to events close to date of petition; evidence of events several years prior to petition could be relevant). Other CINC definitions also use the present perfect tense in defining who is considered a child in need of care. See K.S.A. 2018 Supp. 38-2202(d)(3), (d)(4), (d)(11), and (d)(13).

Notably, however, there also are enumerated circumstances in the statutory CINC definition that use the present tense. Two of these circumstances were cited by the district court to support the CINC adjudication in this case: (1) a child who is without adequate parental care, control, or subsistence and (2) a child who is without the care or control necessary for the child's physical, mental, or emotional health. K.S.A. 2018 Supp. 38-2202(d)(1), (d)(2). Those grounds depend upon a view of the child's circumstances in the present. Although the "present circumstances" may encompass circumstances existing on the date the petition was filed, the court's adjudication decision on whether a child is one in need of care should be based on the circumstances existing on the date of the adjudication hearing. *In re A.E.S.*, No. 108,584, 2013 WL 2992733, at *4 (Kan. App. 2013) (unpublished opinion) (adjudication criteria set forth in K.S.A. 2012 Supp. 38-2202[d][1] and [d][2] should be viewed at time of hearing, rather than at time petition is filed, in deciding whether child is now in need of care).

Based on the analysis above, we conclude the temporal scope of the circumstances to be considered by the district court in deciding whether to adjudicate a child as one in need of care must be based on the plain language of the statutory criteria upon which the court is making the adjudication decision. If the statutory criterion is framed in the present perfect tense, then the adjudication decision will depend upon a view of the child's circumstances in the past and perhaps continuing to the present. If the statutory criterion is framed in the present tense, then the adjudication decision will depend upon a view of the child's present circumstances existing on the day of the adjudication hearing.

2. *Sufficiency of the evidence*

Having determined that the temporal scope of the circumstances to be considered depends on the statutory criteria upon which the district court is making the adjudication decision, we now turn to Mother's claim that there was insufficient evidence to support the district court's decision to adjudicate D.H. as a child in need of care.

Before a district court can adjudicate a child to be in need of care under K.S.A. 2018 Supp. 38-2251, the State must prove by clear and convincing evidence that the child's circumstances fit within one of the criteria defining "child in need of care" under K.S.A. 2018 Supp. 38-2202(d). K.S.A. 2018 Supp. 38-2250. Once the district court has made a CINC decision, the statute governing adjudication requires the court to take further action as follows:

> "(a) If the court finds that the child is not a child in need of care, the court shall enter an order dismissing the proceedings.
> "(b) If the court finds that the child is a child in need of care, the court shall enter an order adjudicating the child to be a child in need of care and may proceed to enter other orders as authorized by this code." K.S.A. 2018 Supp. 38-2251.

When we review a district court's determination that a child is in need of care, we determine whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational fact-finder could have found it highly probable, i.e., by clear and convincing evidence, that the circumstances met at least one of the criterion in the statutory definition of a child in need of care. In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). And to the extent our review requires us to interpret the provisions of K.S.A. 2018 Supp. 38-2202(d), which is a question of law, we have

11

unlimited review. See *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013).

a. *K.S.A. 2018 Supp. 38-2202(d)(5)*

Mother argues there is insufficient evidence to support the district court's adjudication decision under K.S.A. 2018 Supp. 38-2202(d)(5). This subsection of the statute defines a child in need of care as one that "has been abandoned or does not have a known living parent." K.S.A. 2018 Supp. 38-2202(d)(5). As used in this subsection, the word "'[a]bandon' or 'abandonment' means to forsake, desert or, without making appropriate provision for substitute care, cease providing care for the child." K.S.A. 2018 Supp. 38-2202(a). The CINC criterion set forth in subsection (d)(5) is framed in the present perfect tense, so the adjudication decision is based upon a view of the child's circumstances in the past and the present.

The district court's adjudication decision was grounded in its legal conclusion that Mother had "forsaken" D.H. based on the limited contact between the two "for an extensive period of time." But the district court misconstrues the analysis required by K.S.A. 2018 Supp. 38-2202(d)(5). This provision of the statute is phrased in passive voice to focus on abandonment of the child. The court, however, made its adjudication decision based on Mother's affirmative conduct: her alleged failure to have more contact and communication with D.H. from 2009 to 2018. We find the following analysis relevant with regard to construing the language in K.S.A. 2018 Supp. 38-2202(d)(5):

> "Consider the different ways in which statutory provisions defining parental fitness and child abandonment have been written. K.S.A. 2014 Supp. 38-2202(d), which defines when a child is in need of care, focuses on the child, while K.S.A. 38-2269, which defines parental unfitness, focuses on the parent. K.S.A. 38-2202(d)(5)'s provision on abandonment is phrased in passive voice to focus on abandonment *of the child* ('[the child] has been abandoned or does not have a known living parent'), not the act of an

individual parent. While our court has previously said that a court should focus only on the conduct of the parent whose rights are at issue or against whom the child-in-need-of-care petition is brought, we have made that statement in cases involving whether the parent had abused or neglected the child, not in relation to a finding of abandonment.

"This makes sense: when a court is considering whether a child has been abused or neglected by a parent, it is logical to look only at the conduct of the parent against whom those allegations were made. But here, the abandonment provision in the Code looks at the position of the child and authorizes a child-in-need-of-care finding only when *the child* 'has been abandoned or does not have a known living parent.' [Citations omitted.]" *In re K.G.*, No. 112,115, 2015 WL 3514169, at *12 (Kan. App. 2015) (unpublished opinion) (Leben, J., concurring).

The analysis set forth above properly considers the various provisions of the Code *in pari materia* with a view of reconciling and bringing the provisions into workable harmony. Applying that analysis to the facts here, the district court's analysis is legally flawed because it focuses solely on Mother's alleged failure to have more contact and communication with D.H. from 2009 to 2018 instead of focusing on whether D.H. had been abandoned.

Although we find the district court's analysis to be flawed, we still must determine whether after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational fact-finder could have found it highly probable, i.e., by clear and convincing evidence, that D.H. had been abandoned. As used in K.S.A. 2018 Supp. 38-2202(d)(5), the word abandon means (1) to forsake, (2) to desert, or (3) to stop providing care for the child without first making appropriate provision for substitute care. K.S.A. 2018 Supp. 38-2202(a). The first two words used to define "abandon" in K.S.A. 2018 Supp. 38-2202(a)—"forsake" and "desert"—each suggest a permanent act and not just an absence for a period of time. To that end, Webster's New World College Dictionary defines "forsake" as "to give up; renounce (a habit, idea, etc.) . . . to leave;

13

abandon" and "desert" as "to forsake (someone or something that one ought not to leave); abandon." Webster's New World College Dictionary 399, 569 (5th ed. 2014).

The historical circumstances in this case suggest that Mother did not intend to permanently abandon D.H. Mother testified that she did maintain at least some contact with D.H. over the years. And significantly, Mother also testified that attempts to exercise her weekly visitation rights with D.H. were regularly ignored or resisted by Father. This testimony was undisputed. Although she did not see D.H. in person during the six-year period from 2009 to 2015, Mother explained she could not afford to travel from Illinois to Kansas. And in 2015 and 2017, Mother did travel from Illinois to Kansas by Greyhound bus to visit D.H.

In addition to the historical circumstances, we find the circumstances occurring after the CINC petition was filed also suggest that Mother did not intend to permanently abandon D.H. The record reflects that Father died on the afternoon of Wednesday, June 20, 2018. Two days later, on Friday, June 22, 2018, the State notified Mother that a temporary custody hearing for D.H. would be held the following Monday morning, June 25, 2018. Despite this short notice, Mother traveled from Illinois to Kansas and appeared pro se at the hearing. And the record is replete with Mother's consistent efforts to communicate and visit with D.H. from June 25, 2018, to January 25, 2019, the date of the adjudication hearing. Simply put, the evidence in the record is insufficient evidence to establish that Mother intended to permanently abandon D.H.

Under K.S.A. 2018 Supp. 38-2202(a), abandonment also means the termination of care for a child without making appropriate provision for substitute care. To "cease providing care for the child" does not—by itself—constitute abandonment. See K.S.A. 2018 Supp. 38-2202(a). It must be combined with a failure to provide substitute care for the child. In this case, Mother did not cease to provide care for D.H.; she left D.H. in Father's care until his death. After Father's suicide on June 20, 2018, Mother

14

immediately, and on short notice, returned to Kansas for D.H.'s temporary custody hearing and has been actively pursuing custody of D.H. ever since.

After review of all the evidence, viewed in a light most favorable to the State, we find the district court's finding of abandonment is not supported by clear and convincing evidence. As such, the district court erred in relying on K.S.A. 2018 Supp. 38-2202(d)(5) in determining D.H. was a child in need of care.

b. *K.S.A. 2018 Supp. 38-2202(d)(1)*

In addition to subsection (d)(5), the district court found clear and convincing evidence in the evidentiary record to support adjudication under K.S.A. 2018 Supp. 38-2202(d)(1). Subsection (d)(1) defines a child in need of care as one who is without adequate parental care, control or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other custodian. The court's findings of fact and conclusions of law with regard to adjudication under subsection (d)(1) are set forth in the following paragraph of the hearing transcript:

> "The court . . . is going to find that at the time the petition was filed, because [Father] died I think on June—well, in June of 2018, and the petition was filed June 22nd of 2018, the court is also going to find that at that moment, at the time the petition was filed, [D.H.] was without adequate parental care, control, or subsistence. Dad's gone and Mom has been out of the picture for ten years, and the court's going to find that's not adequate parental care, custody, and control—or care, control, and subsistence."

The CINC criterion set forth in (d)(1) is framed in the present tense so an adjudication decision under this subsection should be limited to a view of the child's present circumstances at the time of the adjudication hearing. Contrary to the language of the statute, the district court stated its finding of adjudication was based on the circumstances existing "at that moment, at the time the petition was filed." The court's

statement that it would focus only on the day the petition was filed misconstrues the plain language of the statute. And although circumstances existing on the day the petition was filed may be tangentially related to the circumstances existing on the date of the adjudication hearing, the excerpt above establishes that the district court relied solely on historical facts to adjudicate D.H. as a child in need of care under this subsection. Specifically, the court concluded as a matter of law that D.H. was without parental care, control, and subsistence on June 22, 2018, because "Mom has been out of the picture for ten years." As a preliminary matter, the court's factual finding that Mother had been out of the picture for 10 years is inaccurate. Mother testified that she did maintain at least some contact with D.H. after moving to Illinois and that she personally visited D.H. in 2015 and 2017.

But even if the fact Mom has been out of the picture for 10 years is true, this finding of fact does not constitute clear and convincing evidence that D.H. was without adequate parental care, control, or subsistence on January 25, 2019, the date the adjudication hearing was held. See K.S.A. 2018 Supp. 38-2202(d)(1) (defining child in need of care as child who *is* without adequate parental care, control, or subsistence and condition is not due solely to lack of financial means of child's parents or other custodian). This is not to say that the district court is prohibited from considering that, as of June 22, 2018, Father had died and Mother had limited contact with D.H. over the past 10 years. But these facts can only be considered in the context of deciding whether—on the day of the adjudication hearing—D.H. *currently is* without parental care, control, and subsistence. The reason *why* Mother had been out of the picture for 10 years as of June 22, 2018, is a circumstance of the past and not relevant to whether D.H. currently is a child in need of care under subsection (d)(1).

Although the facts cited by the district court fall far short of clear and convincing evidence to support adjudication under K.S.A. 2018 Supp. 38-2202(d)(1), our standard of review requires us to review all the evidence, in the light most favorable to the State, and

16

decide whether we are convinced that a rational fact-finder could have found it highly probable, i.e., by clear and convincing evidence, that D.H., at the time of the adjudication hearing, was without adequate parental care, control, or subsistence and the condition was not due solely to the lack of financial means of the child's parents or other custodian. Upon review of the transcript of appeal heard by the district court and the journal entry of adjudication, we find no indication that the court considered any of the circumstances that existed when the adjudication hearing was held. To that end, the evidentiary transcript reflects that on January 25, 2019, Mother was ready, willing, and able to provide D.H. with parental care, control, and subsistence. And there is no dispute between the parties that, as of the day of the adjudication hearing, Mother (1) owned her own home, (2) owned her own car, (3) had mental health services and medication management in place, (4) had engaged in visits and therapy with D.H., and (5) was successfully parenting a special needs child and had been doing so for over 10 years.

The State argues this evidence is undercut by the fact that Mother and D.H. had not yet developed a mother/daughter relationship on January 25, 2019, the date of the evidentiary adjudication hearing. But we fail to see how a not-yet-fully-developed mother/daughter relationship equates to a lack of adequate parental care, control, or subsistence. Again, the State does not dispute that Mother had the ability to provide food, shelter, transportation, clothing, medical care, and mental health services for D.H. Mother testified that she had been laid off from her job in the time between the filing of the petition and the date of the adjudication hearing, but Mother explained that she had made a claim for Social Security income benefits and, while waiting for a decision, she was receiving some financial support from her mother.

After review of all the evidence, viewed in a light most favorable to the State, we find the district court's finding that D.H. was without adequate parental care, control, or subsistence at the time of the adjudication hearing is not supported by clear and

17

convincing evidence. As such, the district court erred in relying on K.S.A. 2018 Supp. 38-2202(d)(1) in determining D.H. was a child in need of care.

c. *K.S.A. 2018 Supp. 38-2202(d)(2)*

K.S.A. 2018 Supp. 38-2202(d)(2) defines a child in need of care as one who is without care or control necessary for the child's physical, mental, or emotional health. The district court's findings of fact and conclusions of law with regard to adjudication under this subsection are set forth in the following paragraph of the hearing transcript:

> "The court's also going to find that the parent that was surviving at the time, [Father] passed away, Mom, was not providing the care and control necessary for the child's physical, mental, or emotional health. She had, by admission of her own attorney today, little or no relationship with this child. Therefore, she could not provide the care or control necessary for the child's physical, mental, or emotional health as defined in (d)(2)."

In a nutshell, the district court concluded as a matter of law that D.H. was without the care or control necessary for D.H.'s physical, mental, or emotional health based on its factual finding that Mother had "little or no relationship with this child" as of June 22, 2018, the date the CINC petition was filed. The CINC criterion set forth in (d)(2) is framed in the present tense so an adjudication decision under this subsection should be limited to a view of the child's present circumstances on the day of the adjudication hearing. Again, we are not saying that the circumstances existing on the day the CINC petition was filed are immaterial to an adjudication decision. The fact that, as of June 22, 2018, Mother had little or no relationship with D.H. is one of many circumstances that can be considered in deciding whether—on the day of the adjudication hearing—D.H. *currently is* without the care or control necessary for D.H.'s physical, mental, or emotional health. But the reason *why* Mother had little to no relationship with D.H. as of

18

June 22, 2018, is a circumstance of the past and simply is not relevant to whether D.H. currently is a child in need of care under subsections (d)(1) and (d)(2).

The facts cited by the district court do not constitute clear and convincing evidence to support adjudication under K.S.A. 2018 Supp. 38-2202(d)(2). So we now must review the evidence, in the light most favorable to the State, and decide whether there is clear and convincing evidence in the record to establish that D.H. was without the care or control necessary for D.H.'s physical, mental, or emotional health.

The uncontroverted evidence presented at the adjudication hearing was that Mother had years of experience accessing physical, mental, and emotional health services for her other child, J.Z., and had worked with several state agencies to provide support for J.Z.'s physical and mental health needs. There was also evidence presented to establish that D.H. went to Illinois to visit Mother over her Thanksgiving break for about four or five days and that Mother communicated with D.H. by phone and participated in some of D.H.'s therapy sessions in Kansas. Notwithstanding this uncontroverted evidence, the State asserted D.H. was without the care or control necessary for her physical, mental, or emotional health at the time of the adjudication hearing. In support of its assertion, the State first relied on the testimony of D.H.'s therapist, who began seeing D.H. after the CINC petition was filed in order to treat D.H. for the trauma she experienced from Father's suicide. At the adjudication hearing, the therapist reflected on whether D.H.'s not-yet-fully-developed relationship with Mother would discourage D.H. from discussing with Mother any problems that exist or may arise. The therapist also testified that D.H. did not want to move to Illinois.

First of all, we note that—like Mother—D.H. only had a superficial relationship with her grandfather before the CINC petition was filed. But DCF utilized grandfather as a placement anyway, notwithstanding the fact that the parent of a child enjoys a constitutionally protected relationship, which is to be preferred over the child's

19

relationships with others. See *In re C.L.A.*, 31 Kan. App. 2d 536, 539, 106 P.3d 60 (2003). We also note that in the seven-month time period between the date the petition was filed and the date of the adjudication hearing, D.H. and grandfather's superficial relationship evolved and the two grew closer. This suggests that placing D.H. with Mother would not cause D.H. great harm, as the State argues. And Mother testified that she was aware of D.H.'s mental and emotional health needs and already had identified an individual therapist for D.H. and a family therapist for Mother and D.H. in Illinois. Like the services she was receiving in Kansas, these therapeutic resources in Illinois would provide a safe place for D.H. to privately discuss any problems she was experiencing. Mother demonstrated that she was able to provide structure and enforce boundaries with respect to D.H.'s behavior. Finally, Mother testified she was willing to ensure, and understood the importance of maintaining, D.H.'s relationships with her extended family in Kansas.

Although the therapist testified that D.H. was reluctant to move to Illinois, the therapist also testified that D.H. indicated she did not know what she wanted in terms of her living situation. This is consistent with Mother's testimony that D.H. appeared to have mixed feelings about telling people where she wanted to live. D.H. was reluctant to upset anyone or have confrontation. When D.H. visited Mother in Illinois over her Thanksgiving break, she opened up and told Mother she was confused and did not know what she wanted in terms of her living situation.

The district court did not make any factual findings with regard to the evidence cited above as it relates to the question of whether D.H. was without the care or control necessary for D.H.'s physical, mental, or emotional health. And the State did not argue that the evidence cited above relates to the question of whether D.H. was without the care or control necessary for D.H.'s physical, mental, or emotional health. Even when we review the evidence in a light most favorable to the State, we find insufficient evidence in the record to establish—by clear and convincing evidence—that D.H. was without the

care or control necessary to meet her physical, mental, or emotional health at the time of the adjudication hearing.

In sum, and upon review of all the evidence in a light most favorable to the State, we conclude the district court's adjudication of D.H. as a child in need of care under K.S.A. 2018 Supp. 38-2202(a), (d)(1), (d)(2), and (d)(5) is not supported by clear and convincing evidence. Accordingly, we set aside the adjudication and remand the matter to the district court with directions to dismiss the CINC proceeding, restore legal custody to Mother, and give Mother physical custody of D.H. See K.S.A. 38-2251(a) ("If the court finds that the child is not a child in need of care, the court shall enter an order dismissing the proceedings.").

Reversed and remanded with directions.